DAVID MARPLE and WILLIAM H. MARPLE *v.* JOSEPH MYERS.

1. The operation of the Act of Limitations in favour of an adverse possession, commenced upon the land of a woman during her coverture, who died leaving her husband surviving her, is suspended, not merely until the dissolution of the coverture by her death, but until the husband's tenancy by the curtesy is expended or merged.

2. In such case, prior to the death of the tenant by the curtesy, or the merger of his estate, there would have been no moment when the woman's heirs could have entered upon the land, without being trespassers; and, consequently, there was no such right in them as the statute could affect. But by that death or merger a new right was acquired, which was untouched, because not embraced by the Act, and every new right of entry confers an additional period within which it may be exercised.

ERROR to the Common Pleas of Indiana.

*Oct.* 16.    This was an action of ejectment by David and William H. Marple, against Jacob Myers, for 416 acres of land.

The plaintiffs gave evidence to the following effect: On the 30th August, 1792, their grandfather, William Hollman, obtained a patent for this land. By his will, proved 1st September, 1817, he devised all his estate, real and personal, to his three daughters, Mary, Sarah, and Elizabeth, share and share alike. Of these daughters, Mary, the eldest, married Thomas Kirkner, somewhere about the beginning of the year 1820; Sarah, the second daughter, born February, 1798, married Enoch Marple, 29th December, 1818, and died about 1829, leaving issue the plaintiffs; and Eliza, the third daughter, born in 1800, married John Vandike between 1818 and 1820, and died in 1827 or before, leaving issue one daughter, Hannah, married to Henry Strause; John Vandike died about the year 1835.

By deed of 16th March, 1844, Thomas Kirkner and Mary his wife conveyed their interest in the premises to the plaintiffs. By deed of 17th February, 1845, Enoch Marple, the father of the plaintiffs, conveyed to them his interest, being his curtesy. And by deed of 20th March, 1844, Henry Strause and Hannah his wife conveyed to the plaintiffs their interest in the premises. Writ served 11th March, 1845.

The evidence of the defendant went to show that in the spring of 1821, one Kinter raised a cabin on the land, cleared and fenced some of it, and planted potatoes, &c. That Kinter sold this improvement in 1822 to one Michael, who entered and sowed grain, and who, in the fall of that year, sold to Joseph Myers, the defend-

ant. That the defendant and his family have resided on the land since he bought of Michael, have cleared some 150 acres, and built substantial houses. That the land since 1823 has been continuously assessed in the name, for the first three years, of Michael, as containing 300 acres, and since 1825, in the name of the defendant, or of the defendant and John Myers, as containing 400 acres; and that the taxes have been paid by those to whom it was assessed.

The rebutting evidence of the plaintiffs was acknowledgments of the defendant that he acted as agent for the executors of William Hollman, and for the guardians of his children.

The Court below (BURRELL, President) charged the jury, in that portion of the charge assigned for error, as follows:

"But the plaintiffs allege that, although the jury shall find the questions as to the character and extent of defendant's possession in his favour, yet he cannot be protected by the Statute of Limitations, because they are within the proviso of section 4 of that statute, and are not barred from a recovery. It appears that the three daughters of William Hollman were all married between 1818 and 1820, and therefore were all *covert* in 1821, when Kinter went on this land. Sarah, married to Enoch Marple, died about 1829; and Eliza, married to John Vandike, died prior to 1826, but after Myers went into possession. As there cannot be successive disabilities, of course the plaintiffs are not within the proviso as to these two interests, which are two-third parts, and as to them, the case must be considered without reference to this question, and turning upon the decision of the questions before referred to, whether defendant's possession was adverse, and of the whole tract for twenty-one years at the institution of this suit.

"But as to the other third part, it is different. Mary, the third daughter of William Hollman, married to Thomas Kirkner, is, together with her husband, yet alive, and the plaintiffs claim by a deed from them, conveying the undivided third part of this land. The true construction of the Statute of Limitations gives Mary Kirkner the same time within which she may sue and recover, as to this land, the alleged adverse possession of which commenced during the coverture, as if the land had descended to her, or her right had first accrued at the time adverse possession was first taken. The defendant's counsel have contended that, although she was covert when adverse possession was first taken, if it continued for twenty-one years, both herself and husband being now alive, they could not recover, and that therefore the plaintiffs cannot. If this were correct,

it would involve the incongruity that although her husband and herself might have recovered within the twenty-one years, yet, if, for illustration, the coverture subsists until 1850, there would be a period between the expiration of the twenty-one years and the termination of the coverture, during which time the defendant's title would be perfected as to her share, and it could not be recovered from him; yet if the coverture should terminate in 1850—by the death of her husband—there would then be a period of ten years during which defendant's title would again be defeasible, and during which she might recover from him. And further, she and her husband having conveyed, if their alienees could not recover on this ground, her interest would be wholly gone. From these and other considerations, it is apparent that such is not a rational or true interpretation of the statute, and therefore the jury is instructed that they should find for the plaintiffs the interest of Thomas Kirkner and wife, which is the one undivided third part of this land. As to the other two thirds, the jury will find one way or the other as they determine the questions of fact as to the adverse character of defendant's possession; its continuance as such for twenty-one years before suit, and as to its extent, whether or not to the whole tract, according to the instructions before given."

The verdict was for the plaintiffs for the undivided third of the land, purchased from Thomas Kirkner and wife. The error assigned was to that part of the charge in which the jury were instructed that the plaintiffs were not protected by the proviso in section 4 of the Act of Limitations as to the interest of Sarah Marple and Eliza Vandike.

*Stewart* and *Foster*, for the plaintiffs in error.—The plaintiffs are protected under the proviso as to their mother's interest in this land, by the survivorship of her husband, their father, which still left their disability in force, as during his tenancy by the curtesy they had no right of possession, and could not bring suit. Their father's conveyance to them removed that disability.

And so with regard to Mrs. Vandike's interest. Her husband survived her many years, till 1835. His death removed the disability of her heir, whose title the plaintiffs hold by virtue of her conveyance of it. As to this point we refer to Hull *v.* Vandegrift, 3 Binn. 374.

*Banks*, contrà.—Our adverse possession, beginning in 1821, con-

tinued for more than twenty-one years before suit brought. Holl-man's daughters were *covert* when it began; one of them is still so, and the others died, leaving issue, more than ten years before the bringing of this suit. The proviso of section 4 of the Act of Limitations does not protect the heirs of these last, more than ten years having elapsed since their discoverture before this suit was instituted : Thompson *v.* Smith, 7 S. & R. 209. Disability of coverture cannot be joined to that of infancy to prevent the operation of the statute : Carlisle *v.* Carlisle, 1 Pa. R. 6; Rankin *v.* Tenbrook, 6 Watts, 388.

The opinion of this Court was delivered by

BELL, J.—The Court below instructed the jury that as to the purparts of the land in question, to which the plaintiffs derive title through their late mother and under the conveyance from Strause and wife, their right to recover is barred by the Statute of Limitations. This instruction was based on the idea that, so far as these interests are involved, the case is one of successive disabilities, and consequently, as no action to recover the possession was instituted within ten years from the respective deaths of Sarah Marple and Eliza Vandike, the plaintiffs are not within the protection of the proviso saving the interests of *femes covert* and infants. But this opinion is founded in misapprehension of the position occupied by the plaintiffs. As a brief recurrence to a well ascertained principle will show, they are not driven to claim the benefit of the proviso, except so far as that operated to prevent the running of the statute during the respective lives of their mother and aunt.

Notwithstanding there is some obscurity in the phraseology of our Act of Limitations and of the 21 Jac. 1, from which, so far as it respects land, it is substantially borrowed, it is settled by a series of determinations, that the spirit of these statutes is to allow the respective periods of 20 and 21 years from the time a person might make an entry or support an action; for though the owner be out of possession, the statutes only begin to operate from the moment a right to enter accrues : Hall *v.* Vandegrift, 3 Binn. 374; Carlisle *v.* Carlisle, 1 Pa. R. 6; Cook *v.* Danvers, 7 East, 299. It is therefore said that one effect of these enactments has been to arrange claimants of lands into three different classes; namely, parties claiming presently the whole fee simple, of which they or their ancestors have been disseised; those claiming particular estates, and those claiming reversions or remainders expectant on the

L 2

determination of particular estates : Blanshard on Limitations, 2, 1 Law Lib. As the last of these have no immediate right of entry, during the continuance of the precedent particular estate, the statute can have no effect to bar their interests until they are in a condition to sustain a possessory action, for it would be obviously unjust to deprive a man of his estate for negligence in asserting a right while he is forbidden by law to vindicate it by action. Were, indeed, an expectant estate within the very terms of the Act of Limitations, the destruction of it by mere force of positive law, without any default in the remainder-man, or reversioner, might seek a justification in grounds of supposed policy. Of this an illustration is alleged by the 10 & 11 Wm. 3, cap. 14, which prohibits writs of error to reverse fines, common recoveries, or judgments, unless brought within twenty years after the fine levied, the recovery suffered, or the judgment signed. In the construction of this statute, it has been held that a reversioner cannot have error after twenty years from the time of a recovery, though his title did not accrue until long after that period had elapsed, for, said the Court, the words of the statute are "*twenty years after recovery suffered,*" and it was not the words that are in the statute of fines "after the title accrued :" Lloyd *v.* Vaughan, 2 Str. 1257. But the latter terms, or their equivalents, are found both in the 21 Jac. 1 and in our Act of 1785, and it has accordingly been settled, both in England and Pennsylvania, that reversioners and remainder-men are not within the purview of these statutes, until their right of entry accrues by the determination of the precedent estate, no matter how long that may endure. Thus where there is a valid existing lease for years, the right of entry is postponed until the expiration of the term, and though it may be forfeited by condition broken, yet as the owner is not obliged to take advantage of the forfeiture, the continued possession of the tenant for twenty years, without any subsequent act acknowledging the tenancy, will not be counted adverse : Cook *v.* Danvers, *supra.* In this case, which was much considered, a testatrix had demised the land for a period of years and died, first having devised it in fee to the lessor of the plaintiff. After her death, her heir-at-law entered and received the rents during his life, and was succeeded by his son and heir, who also received the rents, making together a period of time more than twenty years before the expiration of the lease. It was urged for the defendant that the devisee might have entered on the land, without committing a trespass on the tenant, to vest

seisin of the freehold in herself, or to assert her right, whatever it might be, against the party claiming and taking the rent, and not to oust the tenant. But to this it was answered, with the approbation of the whole Court, that no other title or right of entry is within the stat. 21 Jac. 1, except that which is accompanied by a right of possession, which the devisee could not have pending the lease. The same doctrine was, in effect, applied in our case of Shepley v. Lytle, 6 Watts, 500, where a father had demised lands, and afterwards devised them, in fee, to the lessee and others; and it was determined that the statute did not begin to run till after the expiration of the lease, although, after the death of the testator, the lessee and devisee claimed to hold the subject of the devise under the will, and in pursuance of a partition made between him and others. The same rule holds where there is a precedent estate for life, however created, and though it be forfeited as against the remainder-man; for an entry at any time within the allotted period, after the remainder attaches, is sufficient: Kemp v. Westbrook, 1 Ves. sr. 278. See also Morton v. Funk, 6 Barr, 485.

In the case before us, the adverse possession, set up by the defendants, commenced during the coverture of the mother and aunt of the plaintiffs, whose titles were therefore as fully protected by the saving clause of the statute as if the lands, adversely held, had first descended upon them after their respective intermarriages: Carlisle v. Carlisle, supra; Weddle v. Robinson, 6 Watts, 486. The operation of the statute being thus suspended until their deaths, their estates were up to that period as unaffected by it, as though no hostile possession existed. Yet had an immediate right of entry then descended upon the plaintiffs and upon Mrs. Strause, as heirs of their respective mothers, they would have been put to their several actions for the recovery of the possession, within the ten years given by the Act. But in both cases a precedent estate for life vested in their respective fathers, and, intervening between the mothers and their children, suspended the latter's right of entry, until the respective particular estates were expended by the death of the tenant, or a merger of his interest. Prior to this, there was no moment of time when the children of William Hollman's daughters could have entered upon the land without being trespassers, and, consequently, there was, under the principle I have brought to view, no such right residing in them as the Act of Limitations could affect. As to that portion of interest derived through Mrs. Vandike, the right of possession did not vest in her daughter,

the grantor of the plaintiffs, until the death of the former's husband, nor could the plaintiffs enter upon that portion of the land descended from their mother, until their father's conveyance to them of 1845, which being a surrender of the lesser estate, worked its merger in the remainder, and thus perfected the title. The plaintiffs do not therefore seek to excuse their want of action until the institution of the present suit upon the ground of infancy of themselves and Mrs. Strause, as the Court of Common Pleas erroneously supposed, but upon the higher basis of want of right, to which the precedent disability of their respective mothers furnishes no answer. By the death and conveyance of the tenant by the curtesy, a new right was acquired, which was untouched, because not embraced by the Act of Limitations; for every new right of entry confers an additional period within which it may be exercised: Hunt *v.* Bourne, 1 Salk. 339. It is scarcely necessary to say that as to the remaining third of the tract here in dispute, the instructions given to the jury were correct, and as this disposes of the whole case against the defendant below, it is unnecessary to consider the question of evidence thus rendered immaterial.

Judgment reversed, and a *venire facias de novo* awarded.