## Dice *v.* Reese, Appellant.

Argued May 28, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

Louis Gordon, with him Bailey & Rupp and John H. Moody, for appellant.

W. Justin Carter, for appellee.

OPINION BY MR. JUSTICE MAXEY, June 30, 1941:

This is an appeal from a judgment against the defendant in an action of ejectment.

On June 1, 1883, Anna B. Lyme, attempted to convey certain then unimproved premises identified as 2714 Canby Street, Penbrook, Dauphin County, to her husband, John H. Lyme. The husband did not join in this deed. It is, therefore, (as appellant concedes) void. See Wicker v. Durr, 225 Pa. 305, 74 A. 176, and Elder v. Elder, 256 Pa. 139, 100 A. 581. Subsequent to the delivery of the deed to him, the husband entered into possession of the premises and constructed a small house and store on the premises. His wife died intestate on November 16, 1884. He continued to reside on the premises after her death until March 30, 1904, on which date he executed a conveyance of the premises by fee simple deed to Annie C. Stoner. After other conveyances, the premises vested in the defendant, Andrew U. Reese, by deed dated December 1, 1930 and promptly recorded. John H. Lyme died on January 16, 1939, and shortly thereafter Eva M. Dice, the only child of John H. and Anna B. Lyme, instituted this action of ejectment against the defendant. A jury was called and the plaintiff was the only witness. After she testified, counsel for the respective parties agreed to certain facts and later agreed that the matter should

be tried without a jury. The court made no specific findings of fact. Its "final order" was that the defendant "deliver possession" of the premises in controversy "to Eva M. Dice, the lawful owner thereof."

It is the contention of the appellee that at the death of Anna B. Lyme, the latter's husband, John H. Lyme, continued in possession of the premises by right of curtesy, that the deed from Anna B. Lyme to her husband conveyed no title, and that when John H. Lyme died the plaintiff, as the heir at law of her mother, became the owner of the premises.

Appellant's contention is that though the deed of Anna B. Lyme to her husband was void, it nevertheless gave him "color of title" and that his possession of the premises prior to the death of his wife was hostile to the wife's title and subsequent to the death of his wife it was hostile to the heirs of Anna B. Lyme, that his possession subsequent to the death of his wife was not by right of curtesy but under claim of right, and that under and by virtue of the statute of limitations of March 26, 1785,[1] 2 Sm. L. 299, 12 PS 72, and the Act of April 22, 1856,[2] P. L. 532, 12 PS 82, title vested in the defendant.

Appellant's contention must be rejected. His basic error is the premise that he and his predecessors in title held the property in question by *adverse possession.* There was nothing adverse about appellant's posses-

[1] Section 12 of the Act of March 26, 1785, provides: "From henceforth no person or persons whatsoever shall make entry into any manors, lands, tenements or hereditaments, after the expiration of twenty-one years next after his, her or their rights or title to the same first descended or accrued."

[2] Section 1 of the Act of April 22, 1856, provides: "No exception in any act of assembly respecting the limitation of actions in favor of persons non compos mentis, imprisoned, femes covert or minors, shall extend so as to permit any person to maintain any action for the recovery of any lands or tenements, after thirty years shall have elapsed since the right of entry thereto accrued, to any person within the exceptions aforesaid."

382

sion until after John H. Lyme died on January 16, 1939. Lyme was in lawful possession of the premises of which his wife died seised, until March 30, 1904, when he conveyed *his interest* in these premises to Annie C. Stoner. Her right of possession thus acquired vested by divers conveyances in the appellant, as above noted. That John H. Lyme may have *believed* that he owned this land in fee simple by reason of his wife's deed to him on June 1, 1883, does not affect in the slightest degree the legal situation of these parties. *"Color* of title" contributes nothing to the *fibre* of title. In *McCall v. Neely,* 3 Watts 69, 72, Chief Justice GIBSON said: "An entry is by color of title when it is made under a bona fide and not pretended-to claim to a title existing in another." In other words, the occupier of land under "color of title" differs from an avowed squatter on land only in his state of mind. For example, an individual who takes and carries away another's personal property in the honest belief that it is his, has no felonious intent yet the good faith which attended the taking is no defense when the legal owner claims his property. "Color of title" is merely the appearance of title without its reality. It saves its possessor only from the imputation of being a naked trespasser. The defendant and his predecessors in the occupancy of the land in question, back to and including John H. Lyme, had the statuses neither of title holders nor trespassers. They were life tenants and as such were in lawful possession of the premises until John H. Lyme died. Their successive occupancies of these premises did not start the statute of limitations running against this plaintiff, for no principle of law is more firmly established than that the statute of limitations does not begin to run against an heir at law to a property held by one who occupies it as a tenant by the curtesy or as grantee of the tenant by the curtesy until the death of the tenant by the curtesy. The statute could not begin to run against the holder of the title until she had a right of entry.

In *Ege v. Medlar*, 82 Pa. 86, this court held that tenants "holding under a tenant by curtesy could not be disturbed in their occupancy of the premises until his [i. e., the husband's] death. From the period the right of entry vested in the plaintiffs, and from that period only did the statute begin to run against them." As to the Act of 1856 (supra), this court said: "It is alleged that the Act of 1856 has introduced a different rule. Such however is not the case. That act does but affect the former rule as to persons of unsound mind, married women and minors, who, previously thereto, had ten years after the removal of their several disabilities within which to bring suit against such as might have intruded upon their right of entry; now, however, by the statute above mentioned, the lapse of thirty years, from the time when such right of entry accrued, bars their right of action, though the disabilities therein referred to be not removed: *Hunt v. Wall*, 25 P. F. Smith 413. It will be observed, however, that the right of action in such persons is presupposed, for the time runs from the period when the right of entry begins, but where this right does not exist no action lies, and, hence, the statute can have no effect. So, in the case in hand, to say that the statute shall run from a date when the heirs of Elizabeth Ege had no right of entry, and consequently no right of action, is to say that they might be barred of such right by no default of their own and without the possibility of remedy. . . . It is not to be forgotten that mere color of title is valuable only so far as it indicates the extent of the disseisor's claim; if it fails in this, it fails altogether: *Barnhart v. Pettit*, 10 Harris 135."

In *Marple v. Myers*, 12 Pa. 122, this court held that prior to the death of the tenant by the curtesy, there was no moment when the wife's heirs could have entered upon the land, without being trespassers; and therefore, there was no such right in them as the Statute of Limitations could affect. In *Lloyd's Est.*, 281 Pa. 379, 126 A. 806, this court, in an opinion by Justice

384

SADLER, said: "Appellee was not barred because he was not entitled to possession until 1924 when his father [the tenant by the curtesy] died, and was in no position to assert his claim, if any existed, until the preceding estate had ended, and, therefore, the statute [of limitations] could not be applied because of failure to insist upon his ownership at an earlier date. During the continuance of life estate, one holding in remainder is not bound to notice possession taken and continued by virtue of a conveyance from the life tenant: *Stahl v. Buffalo R. & P. Ry. Co.*, 262 Pa. 493 [106 A. 65]; *Gernet v. Lynn*, 31 Pa. 94." 21 C. J. p. 972, sec. 122, contains this statement: "It is well settled that as a general rule the possession of a tenant for life is not adverse to the remainderman or reversioner. Nor does the possession of the grantee of a tenant for life become adverse to the remainderman or reversioner until after the death of the life tenant, whether the conveyance purports to transfer only the life estate or the title in fee simple." In 1 R. C. L. p. 743, sec. 63, appears this statement: "The possession of a tenant for life, as such, cannot be adverse to the remainderman or reversioner, because the right of action of the remainderman or reversioner does not accrue until the death of the tenant for life. It has been so held as to life tenants in right of dower, and by the curtesy." In *Ontelaunee Orchards v. Rothcrmel*, 139 Pa. Superior Ct. 44, that court, in an opinion by Judge CUNNINGHAM, said: "As between the grantees or representatives of a life tenant and the remaindermen, it is clear that the statute of limitations cannot run against the remaindermen until after the death of the life tenant, for not until then does the latter's right of action accrue." (Citing cases.)

It was suggested that the plaintiff should have brought an action of ejectment against the defendant because the latter also held possession of the premises by "color of title." This suggestion overlooks the fact that "eject-

ment is a possessory action only": *Spangler v. Trogler,* 228 Pa. 217, 228, 77 A. 495. In *Harris v. Bell,* 10 S. & R. 38, 42, this court said: "Ejectment is a possessory action; the right of possession may be in one, and the title to the property in another. One having the right of possession may recover in ejectment against him who has the right of property; for if the plaintiff shows himself to have been in the peaceable possession, and that he was forcibly dispossessed, it will enable him to recover, and the defendant cannot set up title in bar." (Citing cases.) In *Heffner v. Betz,* 32 Pa. 376, 378, we said: "What is the purpose of this action [of ejectment]? Certainly it is to try the present right of possession." In *Wallace's Lessee v. Lewis,* 4 Harr. (Del.) 75, it is said: "The action of ejectment necessarily supposes the defendant to be a trespasser." See also 7 Standard Enc. of Procedure, p. 982.

In his discussion of the writ of ejectment, Blackstone, Book III, p. 200, says: "We must recollect that the remedy by ejectment is in its original an action brought by one who hath a lease for years, to repair the injury done him by dispossession." He also refers, on page 202, to "an action of ejectment, in which the title of the lessor comes collaterally and incidentally before the court, in order to show the injury done the lessee by this ouster." Note 22, page 204 of Vol. 3 of Blackstone, reads as follows: "It has been determined that no ejectment can be maintained where the lessor of the plaintiff has not a legal right of entry; and the heir at law was barred from recovering in ejectment, where there was an unsatisfied term raised for the purpose of securing an annuity, though the heir claimed the estate subject to that charge."

Bouvier's Law Dictionary, Vol. 1, p. 636, defines "ejectment" as "a form of action by which possessory titles to corporeal hereditaments may be tried and possession obtained" and as "a form of action which lies to regain the possession of real property, with damages

for the unlawful detention. . . . It may be brought upon a right to an estate in fee-simple, fee-tail, for life, or for years, if only there be a right of entry and possession in the plaintiff." (Citing cases.)

The Act of March 8, 1889, P. L. 10, sec. 1, as amended by the Act of April 16, 1903, P. L. 212, sec. 1 (12 PS sec. 1543) provides: "Whenever any person, not being in possession thereof, shall claim or have an apparent interest in or title to real estate, it shall be lawful for any person in possession thereof, claiming title to the same, to make application to the court of common pleas of the proper county, whereupon a rule shall be granted upon said person not in possession, to bring his or her action of ejectment within six months from the service of such rule upon him or her, or show cause why the same cannot be so brought. . . ."

If the defendant wanted his title to the land in controversy to be litigated before the death of John H. Lyme in 1939, the duty of taking the initiative was his, as he was the "party in possession" and it was he who challenged plaintiff's "interest in or title to" that real estate.

Plaintiff could gain nothing by bringing an action of ejectment against defendant before John H. Lyme's death, for "an action of ejectment is prematurely brought against one claiming under a life tenancy if brought before the death of such tenant": 9 R. C. L., sec. 23, p. 854. In an ejectment action started before the life tenant's death, plaintiff would not have been able to secure a judgment entitling her to possession of the premises in controversy. However, under the statute just above cited and under this court's decision in *Clark v. Clark et al.*, 255 Pa. 574, 100 A. 457, the plaintiff could even before the death of Lyme have been compelled to bring an action of ejectment *if defendant had ruled her to do so*. This initiative *thus resting with the defendant* was not taken.

The judgment is affirmed.