Brennan *v.* Shore Brothers, Inc., Appellant.

Argued November 10, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Richard B. Malis,* with him *Malis, Malis & Malis,* for appellant.

*Simon Lenson,* with him *Lenson & Yusem,* for appellees.

OPINION BY MR. JUSTICE BELL, January 13, 1955:

Plaintiffs, who are the surviving lessors and the personal representatives of a deceased lessor, brought an action upon a complaint to quiet title to premises 4200 North Broad Street, Philadelphia, under Pa. R. C. P. 1061. The defendant is the lessee in possession under a written lease. The jury returned a verdict for

defendant lessee. Judgment non obstante veredicto was entered by the Court below in favor of plaintiffs.

Defendant's first contention raises a procedural question: Was the action properly brought under Pa. R. C. P. 1061?

Pa. R. C. P. 1061 (Action to Quiet Title) provides for four situations in which an action may be brought under the Rule. (b) (2) and (b) (3) provide as follows:

"(2) where an action of ejectment will not lie, to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land;

(3) to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land; . . ."

The first question that arises is whether an action of ejectment will lie. If so, the present action is improper. Ejectment is a possessory action only, and can succeed only if the plaintiff is out of possession, and if he has a present right to immediate possession: *Bruker v. Carlisle Borough*, 376 Pa. 330, 102 A. 2d 418; *Dice v. Reese*, 342 Pa. 379, 21 A. 2d 89; *Stofflit v. Troxell*, 8 Watts & Sergeant 340.

*Stofflit v. Troxell* is on its facts on all fours with the instant case. The Court held that a lessor who made a lease of his land for years to a tenant in possession cannot maintain ejectment until the lease expires. The Court said: "Ejectment is emphatically a possessory action, and cannot be maintained by the plaintiff, unless he has a right to the possession of the property at the time of commencing his action. . . ."

In *Bruker v. Carlisle Borough,* 376 Pa., supra, Chief Justice STERN said (pages 333-34) : ". . . It would seem quite clear that it [Pa. R. C. P. 1061] was intended to be extremely broad in scope and to replace not only proceedings in equity by bill quia timet but also various statutory legal proceedings. In Goodrich-Amram, §1061(b)-1, it is said that 'The action to quiet title is a new form of action, created as a consolidation of a large number of independent actions and proceedings, mostly statutory, designed to remove clouds on title, [and] to adjudicate title disputes where ejectment will not lie. . . .' . . ."

Moreover, the new Pennsylvania Rule should be liberally construed: Pa. R. C. P. 126.

On March 25, 1953, when the action to quiet title was instituted, plaintiffs (lessors) were out of possession and had no right to immediate possession. Having no right to immediate possession they could not successfully bring an action of ejectment, hence the present action was properly brought under Pa. R. C. P. 1061 (b) (2). It is also clear that the action can be sustained under (b) (3).

That brings us to the main question which arises from paragraph 2 of the lease: "The Lessee shall have the option to renew this lease, upon the same terms and conditions as herein set forth, for the further period of Two Years from June 25, 1953, by giving to the Lessors 90 days' notice in writing prior to that date. However, the Lessors shall have the option to terminate this lease *at any time within the term** or the aforesaid extension thereof, upon the death of any one or more of the Lessors, in which case such termination shall be signified by a joint notice in writing from the surviving Lessor or Lessors and the personal representatives or heirs of the deceased Lessor or

---

* Italics, ours.

Lessors, given 90 days prior to such required termination."

The parties had a prior lease dated May 3, 1948 for a term of two years. When that lease was about to expire negotiations were begun by the tenant for an extension. As a result of conversations and negotiations, demands and counter-demands, the present lease was prepared by the lessor and was dated June 15, 1950, for a term of three years, beginning on the 25th day of June, 1950.

Lessee contends that the words "at any time" must be construed to mean *"within a reasonable time* after the death of one or more of the lessors". But that is not what the lease says. Lessors contend the words mean what they say, namely, *"at any time within the term* [of the lease] upon the death of any one or more of the lessors", provided lessors give lessee 90 days' notice of termination.

On February 25, 1951, Francis M. Jahn, one of the lessors, died. No notice of termination was given at that time by the lessors. On February 6, 1953, which was more than 90 days prior to the termination of the lease, lessee exercised its option to extend the lease for a further period of two years; and notice of this extension was acknowledged by lessors' agent in a letter dated February 16, 1953. On February 24, 1953 the surviving lessors and the personal representatives of the deceased lessor jointly exercised their option to terminate this lease by giving lessee written notice of termination more than 90 days prior to the termination of the lease. Their written notice was delivered to lessee and receipted for by it on February 25, 1953.

Although it does not affect the question involved, we are aware of the fact that lessors on February 20, 1953 entered into an agreement to sell the premises

in question to two of the plaintiffs, David J. Getz and Rita H., his wife.

Which construction of the lease is correct? The lease was drawn by the lessors and therefore if its meaning is ambiguous or reasonably susceptible of two interpretations, it must be construed most strongly against the party who drew it: *Barium Steel Corp. v. Wiley*, 379 Pa. 38, 44, 108 A. 2d 336; *Betterman v. American Stores Co.*, 367 Pa. 193, 203, 80 A. 2d 66. In such cases the intention of the parties governs, but the difficulty is to ascertain their intention. A number of letters were introduced in evidence for this purpose. The admission of those letters which were written prior to the execution of the lease were objected to by the lessors as a violation of paragraph 16 of the lease as well as a violation of the Parol Evidence Rule; their admissibility was urged by the lessee under the rule that where a written agreement is ambiguous, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties: *Albert v. Schenley Auto Sales, Inc.*, 375 Pa. 512, 515, 100 A. 2d 605; *Waldman v. Shoemaker*, 367 Pa. 587, 591, 80 A. 2d 776.

Even if the letters were admissible, they do not clarify any ambiguity in the lease, nor aid this Court in determining the intention of the parties as therein expressed.

We agree with the lower Court's interpretation of the lease, namely, that it was unambiguous and that the plaintiffs (lessors) are entitled to judgment under the stipulated facts.

It is our opinion that paragraph 2 of the lease means that the lessors, if any one of them dies within the term (or extension) of the lease, have a paramount option to terminate the lease *"at any time within the term"* (or extension), provided they and the personal

representatives of the deceased lessor give to lessee a written 90 day termination notice.

In the analogous case of *Lyons v. Cantor,* 363 Pa. 413, 414-415, 418, 70 A. 2d 285, this Court construed a similar provision in a lease. The present Chief Justice there said: "Paragraph 20 reads as follows: 'From April 1, 1949, to January 1, 1951, upon any sale of the real estate of which the herein demised premises are a part, this Lease may be lawfully terminated, at the sole option of the Landlord, by giving to the Tenant six months' notice in writing of such termination. . . .'

. . .

"3. The word 'upon' in the phrase 'upon any sale of the real estate' is quite obviously used to denote, not time, but a condition precedent. When an event is certain to occur the word 'upon' is synonymous with the word 'when' or 'thereupon'; for example, 'upon my death my children shall receive my library'. Where however, the happening of the event is contingent or uncertain the word 'upon' has ordinarily the meaning of 'if' or 'on condition that'; for example, 'upon my surviving my children my brother shall receive my library'; see Little v. Wilcox, 119 Pa. 439, 447, 13 A. 468, 474. So here, 'upon any sale of the real estate' means, not when, but if any such sale occurs, that being the condition upon which alone the lessor was to have the right to terminate the lease; there is nothing in the use of the word 'upon' which suggests that the phrase 'upon any sale of the real estate' was intended to relate back grammatically to the designation of the period during which the lease might be terminated."

Lessee's interpretation that the words *"at any time"* mean "at any *reasonable* time after the death of a lessor" requires the insertion of a word which is not in the lease and *which changes its clear language* and,

in our judgment, its meaning. It follows that lessee's interpretation cannot be adopted even though the equities might be in the lessee's favor.

Order affirmed.