409 A.2d 337

**Joseph SOFFER and Violet Soffer, his wife, Appellants,**

**v.**

**James L. BEECH and Sun Oil Company, a New Jersey Corporation.**

Supreme Court of Pennsylvania.

Argued Sept. 20, 1979.

Decided Dec. 21, 1979.

---

Paul A. Love, DeCello, Manifesto, Doherty & Love, P. C., Pittsburgh, for appellants.

Jerome W. Kiger, Grogan, Graffam, McKinley & Solomon, Pittsburgh, for Sun Oil Co.

Robert Ivan Johnston, Pittsburgh, for James L. Beech.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

At common law a lessee who had never entered into possession of his leasehold was prohibited from bringing an action in ejectment to gain possession. The issue before us is the continued validity of this rule. We are satisfied by considerations of reason and fairness and by the weight of modern case law that the ancient rule now serves no useful purpose, and, accordingly, we refuse to permit its continued use.

### I

On August 15, 1951, George and Mary Beech leased property they owned in Allegheny County to appellee Sun Oil Company for a term of fifteen years with two additional five-year options. The lease was recorded. In 1956 George and Mary Beech conveyed the property to appellee James Beech. The lease to Sun Oil was not affected.

On September 17, 1962, appellee James Beech and his wife leased the same property to appellants Joseph and Violet Soffer for a fifty-year term.[1] This lease specifically recited that it was "subject to" the prior lease to Sun Oil.[2] This lease was also recorded.

1. The 1962 agreement leased the property to the Soffers and another couple. The other couple has since assigned their interest to appellants.

2. The relevant paragraph of this lease provided:
   "This lease is subject to a prior lease given on the said premises by George V. Beech and Mary J. Beech, his wife, to the Sun Oil Company, dated August 15, 1951, for a period of fifteen (15) years, plus right in the lessee, to two five-year extensions, which said lease has been assigned by George V. Beech to James L. Beech. It is understood and agreed that the lease herein made is subject to all the terms and provisions of the said lease of August 15, 1951, and that during the term of the said lease of August 15, 1951, and any extensions thereof, rentals shall be payable by the Sun Oil Company directly to the said James L. Beech. In such case the second parties shall be relieved of any obligation under the within lease until the expiration of the said Sun Oil Company lease."

In July of 1974, as Sun Oil's term was approaching an end, James Beech and Sun Oil executed what they styled an "amendment and ratification" to the original 1951 lease. This "amendment and ratification" would allow Sun Oil, at its option, to remain in possession until at least 1997.[3]

In March of 1976, the Soffers sent written notice to Sun Oil of their intention to take possession on October 1, 1976, the expiration date of Sun Oil's original fifteen year lease plus the original options. Sun Oil replied that it would remain in possession under the provisions of the 1974 "amendment and ratification."

The Soffers then filed this ejectment action against Sun Oil and James Beech in the Court of Common Pleas of Allegheny County. The complaint asserted that the "amendment and ratification" constituted a cancellation of the existing 1951 lease and that the Soffers were entitled to possession of the property and damages of $240 a month from January 1, 1975, the effective date of cancellation.

Sun Oil responded by raising a single preliminary objection, which is the subject of this appeal.[4] Sun Oil asserted that the Soffers' complaint failed to state a cause of action in ejectment because it did not allege that the Soffers had ever entered into possession of the property and were thereafter ousted. Sun Oil claimed that the complaint could not be amended to include such an allegation and, therefore, that the complaint should be dismissed without leave to amend. The trial court sustained Sun Oil's objection and dismissed the complaint. On appeal, the Superior Court

3. This instrument declared that the 1951 lease was "in full force and effect," and then provided for six automatic five-year renewal periods, any of which Sun Oil could cancel on 180 days written notice. At the conclusion of these renewals the lease was to continue from year to year, with 120 days written notice required of either party in order to terminate.

4. Appellee James Beech filed an answer denying that his 1962 agreement with the Soffers, styled "LEASE," was in fact a lease, and denying that the Soffers were entitled to either possession or damages. These issues are not before us on this appeal, and we express no view on them.

affirmed without opinion. This Court then granted allowance of appeal.

## II

It has never been doubted that a tenant who has been in possession of his leasehold but who is subsequently ousted may bring an action in ejectment to regain possession for the duration of his term. He may do so whether the wrongful possessor is his landlord or a third party. 13 Stnd.Pa.Prac. Ch. 67, § 35 (1957). Indeed, ejectment was originally developed as a remedy for tenants wrongfully dispossessed of their estates. *Dice v. Reese,* 342 Pa. 379, 385, 21 A.2d 89, 92 (1941); 3 W. Blackstone, Commentaries * 199. We are faced today only with the question of whether a lessee who has never been in possession but who is entitled to immediate possession, should be permitted the same remedy.[5]

The common law originally denied ejectment to the lessee who had never been in possession. And a handful of cases in this Commonwealth, most of them now musty with age, have acknowledged this restriction. The trial court, in dismissing the Soffers' complaint, relied on the two most recent of these cases, *Barnsdall v. Bradford Gas Co.,* 225 Pa. 338, 74 A. 207 (1909) and *Dime Bank and Trust Company of Pittston v. Walsh,* 143 Pa.Super. 189, 17 A.2d 728 (1940). In *Barnsdall* this Court noted the existence of the rule that a lessee could not maintain ejectment prior to entry. *Barnsdall,* however, distinguished the rule and upheld an ejectment action by a lessee of mineral rights who had never entered into possession.

In *Dime Bank* the Superior Court followed the rule and elaborated on its history:

**5.** As recited above, appellants' complaint alleges that the "amendment and ratification" agreement between James Beech and Sun Oil worked a cancellation of the prior lease, and, therefore, that appellants became entitled to immediate possession on January 1, 1975. Sun Oil has not challenged this claim and the issue is not before us. For purposes of this appeal we assume, without deciding, that appellants were entitled to immediate possession at the time they filed their complaint.

"The court below . . . held, and in our opinion correctly, that as plaintiff had only a leasehold interest in the lot of land, and had never entered into possession, it could not bring ejectment to obtain possession. The history of the action of ejectment given in Blackstone's Commentaries (Book III, pp. 199–206) shows that a tenant for years must have been in possession under his lease and been ousted before he can bring ejectment. In fact, a *lessee* did not become a *tenant for years*, until after he entered 'by force of the lease': Littleton's Tenures (Edited by Wambaugh), Book I, chap. VII, p. 26."

143 Pa.Super. at 195, 17 A.2d at 731 (emphasis in original). We do not question the Superior Court's recitation of the early history of the rule. But the mere recitation of the rule's history does not explain its present use nor does it justify its continued application. Indeed, a review of the historical development of the action of ejectment indicates that the common law rule requiring prior entry by a lessee is inconsistent with the modern scope of the writ and with our modern conception of landlord and tenant relations.

### III

The legal action of ejectment began not as a real property action, but as an action in trespass. *Seitzinger v. Ridgway*, 9 Watts 496 (1840). Ejectment originally rested on a claim of actual or constructive ouster of the plaintiff. 13 Stnd.Pa.Prac. Ch. 67, § 1 (1957). Entry by the lessee and subsequent ouster by the defendant were essential to the claim of trespass.

The writ of ejectment, however, has changed dramatically in the centuries since its narrow origin. Today, the right to possession is the central element of the action—not the claim of ouster. The writ of ejectment has long been the general method for obtaining possession of real property. *Dice v. Reese*, 342 Pa. 379, 384–86, 21 A.2d 89, 92–93 (1941); *Irwin v. Hoffman*, 319 Pa. 8, 16–17, 179 A. 41, 45 (1935). The writ has expanded from a tenant's remedy and has long since been available to fee claimants and all

others who assert the right to possession of estates in real property. See *Gilberton Coal Co. v. Schuster,* 403 Pa. 226, 228, 169 A.2d 44, 45 (1961).[6] Yet it has never been suggested that a fee claimant need allege entry and ouster in order to succeed in ejectment. Rather, our cases involving fee claimants speak only of the right to possession by one not presently in possession. See e. g., *Brennan v. Shore Bros., Inc.,* 380 Pa. 283, 285, 110 A.2d 401, 402 (1955); *Bruker v. Carlisle Borough,* 376 Pa. 330, 334–35, 102 A.2d 418, 420 (1954).

Nevertheless, the growth of ejectment to provide a general remedy for the recovery of estates in realty did not extend to lessees who had never been in possession. In all likelihood this was because at common law a lessee who had

6. The statutory basis for ejectment in force at the time this case arose declared in sweeping language that the writ "shall issue in all cases where lands, tenements or hereditaments are claimed . . ." Act of April 13, 1807, P.L. 296, § 1, 12 P.S. § 1514. This section has subsequently been repealed by Act of April 28, 1978, P.L. 202, § 2(a), effective June 27, 1978 and was replaced by 42 Pa.C.S.A. § 1722(a)(1) which gives this Court authority to prescribe and modify general rules governing practice and procedure.

Because the writ of ejectment was not a real property action, but originally was an action in trespass, it was not subject to the hypertechnical pleading rules which surrounded the common law real actions. This in part was responsible for the growth and popularity of ejectment. See generally Holdsworth, 7 History of English Law 4–10 (1926). Fee claimants seeking to take advantage of this simple means of determining title to realty, soon developed methods for using the writ. By a series of paper leases and fictitious claims they were able to frame their dispute to fit within the original pattern of the ousted tenant's cause of action. As Blackstone characterized it, the method "entirely depends upon a string of legal fictions; no actual lease is made, no actual entry by the plaintiff, no actual ouster by the defendant; but all are merely ideal, for the sole purpose of trying the title." 3 Blackstone, Commentaries * 203. By the seventeenth century this procedure had become so common that the English courts instituted reforms calculated to allow these claims without such contrivances. This was the beginning of the writ of ejectment as it exists today. It is ironic indeed that courts, in their willingness to determine title to property, have knowingly accepted wholly fictitious claims of lease, entry and ouster, but have been unwilling to provide a remedy to actual lessees, such as the Soffers, who do not make these fictitious claims.

We note that our rules of civil procedure have abandoned the historic system of pleading in ejectment in favor of the more straightforward assumpsit rules, Pa.R.C.P. 1051–1058.

not entered into possession was not thought to have an estate in land. Rather, such a lessee was said to have an "interesse termini," or an interest in a term. Coke. Litt. 46b; 2 Blackstone, Commentaries * 144. Whatever the original usefulness of this distinction may have been, we see no reason why it should continue to prevent a lessee from maintaining an action in ejectment.[7]

Even fifty years ago the rule requiring prior entry was correctly viewed as a remnant of an earlier age. Speaking of precisely the rule we review today, one federal court of appeals then observed:

> "These things relate to a far-distant past. They are strangers to the jurisprudence of the United States. The modern tendency of jurisprudence is to look through shadows to substance—to eliminate technicalities in the interest of substantial justice. It is no longer necessary to go upon land as in the days of old and receive a twig or a clod of dirt as a token of changed possession. . . . In the more modern doctrine of ejectment, entry is not a prerequisite to the action, and if the lessee has such interest in the property as gives a present right of possession, it is immaterial whether he has entered into possession before bringing the action. The right of entry, not the entry

7. In *St. Vincent's Roman Catholic Cong. of Plymouth v. Kingston Coal Co.*, 221 Pa. 349, 70 A. 838 (1908) this Court held that a lease for twenty-one years or more, if properly recorded, vests an estate for years in the lessee and not simply an interesse termini. This result was based on the Court's construction of certain provisions of our recording act, still in effect today, Act of May 28, 1715, 1 Sm.L. 94, § 5, 21 P.S. § 471 (1955 and Supp.1979). We note that the Soffers' complaint alleges a lease for more than twenty-one years and proper recording. This would vest the Soffers with an estate for years and not an interesse termini. But whatever this distinction may mean in other contexts, we expressly refuse to make the availability of ejectment turn on such niceties. There is little to explain even the original usefulness of the common law distinction between an estate for years and an interesse termini; it has been rejected by text-writers who have called it "difficult to comprehend," Tiffany, 1 The Law of Real Property 132 (3d ed. 1939), and it has been abolished by statute in England, Law of Property Act of 1925 § 149(1). We refuse to use the concept now to create an artificial barrier to the remedy of ejectment.

itself—the right of possession, not actual possession—are the essentials of an action in ejectment."

*Ewert v. Robinson,* 289 F. 740, 750–51 (8th Cir. 1923). The notion that prior possession by a lessee is necessary to trigger the right of possession is a legal fiction unrelated to our more modern view of a lessee's contractual rights. See *Pugh v. Holmes,* 486 Pa. 272, 405 A.2d 897 (1979) (opinion by Larsen, J.); id., 486 Pa. at 298–299, 405 A.2d at 910 (Roberts, J., joined by Nix and Manderino, JJ., concurring) (holding landlord and tenant's obligations mutually dependent); see also *Albert M. Greenfield & Co., Inc. v. Kolea,* 475 Pa. 351, 380 A.2d 758 (1977) (relieving tenant of obligation to pay rent when premises destroyed by fire). We refuse to afford a lessee entitled to possession by virtue of his lease lesser protection than that given a fee claimant seeking possession.

## IV

By making ejectment available to lessees before entry, we adopt the view of modern authority. As stated in 49 Am. Jur.2d *Landlord and Tenant* § 220 (1970):

"It seems now generally agreed that ejectment will lie in favor of the lessee against the third person, even before entry on the demised premises by the lessee."

Accord, Tiffany, 1 The Law of Real Property § 86 (3d ed. 1939) (and cases cited); 51C C.J.S. *Landlord and Tenant* § 314 (1968) (and cases cited). This is also the result reached by modern decision, see, e. g., *Leader v. Joyce,* 271 Minn. 9, 135 N.W.2d 34 (1965); *Wright v. Irving Trust Co.,* 70 F.2d 245, 246 (2d Cir. 1934) (L. Hand, J.).[8]

---

**8.** The Restatement (Second) of Property, Landlord and Tenant § 6.1 (1976) is intended to apply to situations where a tenant is deprived of possession or use of his leasehold by the landlord or by action attributable to him. This section allows the tenant to terminate his lease or continue the lease and recover damages, abate rent, use rent to eliminate the interference or withhold rent and place it in escrow. Comment b to this section makes it clear, however, that other relief may also be available:

"b. *Unauthorized possession or conduct.* An unauthorized possession of all or any part of the leased property by the landlord, or someone whose conduct is attributable to him, is an eviction of the tenant that could be cured by the tenant himself. The rule of this

■ We should not hesitate, in any event, to abolish a rule of law when its basis has disappeared. Holmes, *The Path of the Law*, 10 Harv. L. Rev. 457 (1897); Cardozo, The Nature of the Judicial Process 150–51 (1921).[9]  In recent times this Court has been alert to reject other out-dated rules which were no longer in accord with contemporary experience and policy. *Ayala v. Phila. Board of Public Education*, 453 Pa. 584, 603–606, 305 A.2d 877, 886–88 (1973) (abrogating governmental immunity) (and cases cited); see, *e. g., Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286 (1972) (rejecting rule that psychiatric evidence is inadmissible in murder prosecution for purposes of determining whether defendant had acted in heat of passion); *Falco v. Pados*, 444 Pa. 372, 282 A.2d 351 (1971) (abrogating parental immunity); *Reitmeyer v. Sprecher*, 431 Pa. 284, 243 A.2d 395 (1968) (rejecting prior limitation on landlord's liability for defective conditions); *Flagiello v. Pennsylvania Hospital*, 417 Pa. 486, 208 A.2d 193 (1965) (abrogating charitable immunity).

■ Indeed, as this Court observed long ago in the specific context of enlarging the scope of the writ of ejectment:

"Many other alterations have taken place; and the same authority which brought it thus far, may certainly carry it to a higher degree of perfection, as experience happen to show inconveniences, or defects."

section does not require him to take legal steps available to him to eliminate the eviction, although that option is open to him." Companion section 6.2, applicable when the tenant is deprived of possession by a third party, expressly adopts the view that a "tenant may recover the possession of the leased property from the third party improperly in possession."

The Illustrations to both of these sections make clear that the rules of the Restatement are not limited to situations where the tenant previously has been ousted. See, *e. g.,* § 6.1, Comment c, Illustration 7; § 6.2, Comment b, Illustration 2.

9. In *The Path of the Law*, 10 Harv. L. Rev. 457, 469 (1897), Justice Holmes remarked:

"It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past."

*Boyd v. Cowan,* 4 Dall. 138, 140 (1794). We are convinced that the rule we review today does not meet current societal and jurisprudential needs. The common law rule now stands as an unfair barrier to justice and we therefore abolish it. We hold that a lessee entitled to present possession of his leasehold may bring ejectment regardless of whether he has previously entered into possession.

The order of the Superior Court is reversed, the order of the Court of Common Pleas of Allegheny County is vacated and this case is remanded to the court of common pleas for proceedings consistent with this opinion.

MANDERINO, J., did not participate in the decision of this case.