## Olexa v. DeSales University

C.P. of Lehigh County, no. 2004-C-2341.

· *Leo V. DeVito Jr.,* for plaintiff.
*Joseph S. D'Amico Jr.,* for defendant.

Black, *J.,* December 12, 2005—The plaintiff, Stephanie Olexa, is the owner of a 7.7019-acre tract of land located in Upper Saucon Township, Lehigh County, Pennsylvania. The defendant, DeSales University, owns the surrounding land on which it has developed various buildings and facilities as part of its campus. In her complaint, Olexa seeks relief from the University in four counts for interference with her property.

In Count I labeled "Trespass," Olexa alleges that the University has constructed a stone driveway and an underground storm water pipe that encroach on the southern portion of her property. She seeks removal of the encroachments, an injunction against future trespasses on her property; and compensatory and punitive damages.

In Count II labeled "Storm Water Trespass," Olexa alleges that the University has unlawfully diverted surface water onto her property. She contends that the increased flow of surface water onto her property is a continuing trespass as well as a violation of the Pennsylvania Storm Water Management Act, 32 P.S. §680.13, and the Upper Saucon Township Subdivision and Land Development Ordinance, sections 262.2 and 262.3. She requests an order compelling the University to cease and remediate

damage from the storm water trespasses, an injunction against future trespasses; and compensatory and punitive damages.

In Count III labeled "Negligence," Olexa alleges that the University was negligent in causing the physical encroachments and storm water trespasses referred to in Counts I and II. She seeks the same relief as in these counts.

In Count IV labeled "Ejectment," Olexa seeks the removal of the physical encroachments, the cessation of the storm water trespasses and a judgment granting her sole and exclusive possession of her property.

After a two-day trial without jury and oral argument, we make the following findings of fact and conclusions of law:

## FINDINGS OF FACT

(1) The plaintiff, Stephanie Olexa, is the owner of a 7.7019-acre tract of land located north and west of the intersection of Landis Mill Road and Clamshell Drive, in Upper Saucon Township, Lehigh County, Pennsylvania. The property is described in a certain deed dated July 11, 1980, recorded in the Office of the Recorder of Deeds of Lehigh County, Pennsylvania, in Deed Book 1282 page 275.

(2) Olexa purchased the property jointly with her former husband on July 11, 1980.[1] She acquired sole ownership on May 17, 2002, when her former husband deeded his interest in the property to her as part of the

---

1. Plaintiff's exhibit 5.

equitable distribution of marital property in their divorce.[2]

(3) The defendant, DeSales University, is a private educational institution with its principal office located at 2755 Station Avenue, Center Valley, Upper Saucon Township, Lehigh County, Pennsylvania.

(4) The University's campus has experienced significant growth since 1980. Among other improvements, the University has added a baseball field, batting cages, a softball field, a University center, residences, a sports and fitness center, and a science center, as well as roadways and parking areas.[3]

(5) The Olexa property is a heavily wooded, unimproved tract. A streambed runs from east to west across the southern portion of the property. The property is zoned R-3, which permits single-family homes and cluster development.

(6) The Olexa property is bordered on the east by Landis Mill Road, a public street, and on the south by Clamshell Drive, a private road owned by the University. Landis Mill Road and Clamshell Drive intersect at the southeast corner of the Olexa property.

(7) Clamshell Drive is an unpaved, stone road.

(8) Surveys of the Olexa property were conducted by Earl P. Geissler P.L.S., on behalf of Olexa, and by Kerry L. Good P.E., on behalf of the University. The results of the two surveys were similar, but placed the boundaries of the Olexa property at slightly different locations.[4]

---

2. Plaintiff's exhibit 6; N.T. 8/15/05, 47.
3. N.T. 8/15/05, 94-98.
4. Plaintiff's exhibit 2; defendant's exhibit 7.

(9) The survey of Kerry Good is the more accurate one since Mr. Good was able to locate more monuments than Mr. Geissler as references for determining the boundaries of the property.

(10) Both surveys concur that (a) the stone road known as Clamshell Drive currently extends partially onto the Olexa property and (b) a turning radius at the intersection of Landis Mill Road and Clamshell Drive encroaches on the southeast corner of the Olexa property.

(11) In 1980, when the plaintiff and her former husband acquired the Olexa property, the width of Clamshell Drive was approximately equal to the width of one automobile.[5]

(12) In or around 1987 or 1988, the University expanded the width of Clamshell Drive to allow two lanes of traffic. Currently, it is approximately 20 feet wide.[6]

(13) The expanded Clamshell Drive encroaches by two to three feet over part of the southern portion of the Olexa property, as indicated on the survey of Kerry Good, P.E.[7]

(14) The turning radius over the southeast corner of the Olexa property came into existence at some point in time after 1980 to accommodate southbound traffic on Landis Mill Road desiring to turn onto Clamshell Drive.[8] It is unclear exactly when or how this turning radius first came into use.

---

5. N.T. 8/15/05, 61.
6. N.T. 8/15/05, 61; N.T. 8/16/05, 141-42.
7. Defendant's exhibit 7.
8. N.T. 8/16/05, 123.

(15) The Pennsylvania Department of Transportation has paved this turning radius. The date that PennDOT did so is unknown.[9]

(16) This turning radius is also a continuing encroachment on the Olexa property, as indicated on defendant's exhibit 7.

(17) In August 1997, the University constructed an underground storm water drainage pipe under Clamshell Drive to redirect water from its property to the streambed on the Olexa property.[10]

(18) This pipe encroaches approximately 30 feet onto the Olexa property.

(19) Before the pipe was constructed, significant rain events caused water to sheet-flow over Clamshell Drive onto the Olexa property.[11] The pipe redirects this water from its natural course on the University's land under Clamshell Drive onto the Olexa property, where it is discharged at a single location at the streambed on the Olexa property.[12]

(20) Most of this pipe is located underground, but the end of the pipe at the streambed on the Olexa property is visible.[13]

(21) The pipe under Clamshell Drive was built without the approval of either Olexa or Upper Saucon Township.[14]

---

9. N.T. 8/16/05, 123.

10. N.T. 8/15/05, 101; N.T. 8/16/05, 22, 154.

11. N.T. 8/15/05, 42, 103.

12. N.T. 8/15/05, 104; N.T. 8/16/05, 175.

13. N.T. 8/16/05, 126.

14. N.T. 8/15/05, 105, 106.

(22) The University has conducted studies and plans in preparation for removal of the pipe under Clamshell Drive, but despite demand, has failed to remove it.[15]

(23) A 42-inch storm water drainage pipe exists under Landis Mill Road, extending from the University property to the eastern boundary of the Olexa property. This pipe carries storm water from the University's land on the east to the streambed on the Olexa property.

(24) The pipe under Landis Mill Road existed before Olexa and her former husband purchased the Olexa property in 1980.[16] The size and direction of this pipe have remained unchanged since then.[17]

(25) A culvert exists on the University's property at a point near the southwest corner of the Olexa property. Three or four watersheds comprising approximately 580 acres of land drain in the direction of this culvert.[18] The University owns 352 acres of this land.[19] The culvert represents the topographical low point for neighboring properties.[20]

(26) A stainless steel underground pipe is located in the culvert to carry storm water in a generally northerly direction along the University property adjacent to the western boundary of the Olexa property.

(27) The University maintenance building is also located near the southwest corner of the Olexa property. The maintenance building was originally a sewage pack-

15. N.T. 8/15/05, 247.
16. N.T. 8/16/05, 227.
17. N.T. 8/16/05, 227.
18. N.T. 8/16/05, 90, 208.
19. N.T. 8/16/05, 40, 208.
20. N.T. 8/16/05, 12.

age plant. It was converted to a maintenance building in 1988.

(28) The University built a baseball field in 1991[21] and batting cages in 1994 or 1995[22] on its land to the south of the Olexa property.

(29) The batting cages were built over a swale that had functioned to move surface water on the University's land to the culvert near the southwest corner of the Olexa property.[23]

(30) In order to build the batting cages, the University re-graded the swale to flatten it in the area where the batting cages have since been constructed. This action has obstructed the natural flow of surface water on the University's land, causing water to be diverted onto the Olexa property.[24]

(31) The topography of the area is such that the University's land north, east and south of the Olexa property slopes toward the Olexa property.

(32) The University has built seven water retention basins during the course of developing its campus.[25]

(33) The storm water management system that has been installed by the University was reviewed and approved by the Upper Saucon Township Engineer and the Lehigh Valley Planning Commission.[26]

---

21. N.T. 8/15/05, 93.
22. N.T. 8/15/05, 104.
23. N.T. 8/15/05, 104, 134.
24. N.T. 8/16/05, 22, 80-81.
25. N.T. 8/16/05, 185-86.
26. N.T. 8/16/05, 216.

(34) The streambed through the Olexa property is located at approximately the same location as when Olexa and her husband acquired the property in 1980. However, although the streambed was usually dry, it is now often filled with water, resulting in significant erosion along the banks of the streambed and the exposure of some tree roots.

(35) Construction of the University's baseball field on land to the south of the Olexa property did not adversely affect the flow of water onto the Olexa property.

(36) Aside from the construction of the batting cages and the installation of the storm water pipe under Clamshell Drive, the University's development of its campus has not unreasonably or unnecessarily changed the quantity or quality of surface water flowing onto the Olexa property.

(37) Olexa has not suffered any monetary damage as a result of any actions of the University as aforesaid.

(38) The aforesaid actions of the University were not outrageous.

## DISCUSSION AND CONCLUSIONS OF LAW

### I. *Physical Encroachments*

In Count I, the plaintiff seeks relief from physical encroachments at three locations along the southern portion of her property. These encroachments are (1) the several feet of Clamshell Drive that extend over the southern boundary of her property, (2) the turning radius at the southeast corner of the property and (3) the storm water pipe under Clamshell Drive that extends

across the southern boundary of her property into the streambed.

A trespass to land occurs when one person wrongfully enters another's real property.[27] The wrongful entry may be committed by the continued presence on another's property of a structure, roadway, pipe or other physical object that the defendant has caused to be placed there without permission of the property owner.[28] A trespass to land is a tort, for which the property owner may be entitled to equitable relief, monetary damages or both.

## A. Clamshell Drive and the Turning Radius

In this case, the University does not dispute that Clamshell Drive physically encroaches on the Olexa property to some extent, though there is some disagreement as to the precise location of the southern boundary of the property. Each party presented expert testimony from a surveyor to establish the precise location of this boundary. We have concluded that the survey presented by Kerry L. Good P.E. is the more accurate because Mr. Good was able to locate and base his survey on more monuments than Earl P. Geissler P.L.S. was able to locate. From Mr. Good's survey, we have concluded that Clamshell Drive encroaches by two to three feet over part of the southern boundary of the Olexa property, as indicated in Mr. Good's survey plan and testimony.

Likewise, the University does not dispute that the turning radius at the intersection of Landis Mill Road and Clamshell Drive encroaches on the southeastern corner

27. Black's Law Dictionary, 7th ed. definition no. 1.
28. Restatement (Second) of Torts, §161.

of the Olexa property. Again, we find that the survey of Kerry Good P.E. accurately shows the precise location of this encroachment.

The University defends these encroachments by arguing that it has acquired the land over which they lie by adverse possession, or alternatively that it has acquired the right to use this land by prescriptive easement. To acquire title to land by adverse possession, the University "must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for 21 years [or more]." *Baylor v. Soska,* 540 Pa. 435, 438, 658 A.2d 743, 745 (1995). Similarly, to acquire an easement by prescription, the University must prove that its use of the Olexa property was adverse, open, continuous, notorious and uninterrupted for a period of 21 years or longer. *Boyd v. Teeple,* 460 Pa. 91, 331 A.2d 433 (1975). The University has the burden of proof on these issues.

From the evidence submitted, it is clear that the University has not met its burden of proof with respect to the stone road known as Clamshell Drive. Although this road has existed in some form for more than 21 years, the road was initially the width of a single car. It was not until the University moved its maintenance shop to its present location southwest of the Olexa property that Clamshell Drive was expanded to its present width. This occurred in 1987 or 1988, according to the testimony of John M. Miller, a University employee. Thus, the widening of Clamshell Drive occurred less than 21 years prior to August 24, 2004, the date this lawsuit was filed. There is no persuasive evidence that the portion of Clamshell Drive extending onto the Olexa property was actually used by the University before the road was ex-

panded in 1987 or 1988. Consequently, the encroachment of Clamshell Drive along the southern boundary of the Olexa property cannot be justified by the University's claim of adverse possession or prescriptive easement.

With respect to the turning radius, no evidence was presented as to when the University began using this radius or when PennDOT paved it. Hence, the University has failed to prove the requisite 21 years of possession or continuous use to support either a claim of adverse possession or prescriptive easement.

For these reasons, the University is not entitled to use any portion of Clamshell Drive or the turning radius to the extent that they encroach on the Olexa property. The University's use of these portions of the Olexa tract constitutes a continuing trespass for which Olexa is without an adequate remedy at law. Accordingly, Olexa is entitled to an injunction to prohibit the University, its agents and employees from using this portion of the Olexa property. In addition, Olexa is entitled to a mandatory injunction requiring the University to remove the portion of Clamshell Drive that extends onto the southern portion of the Olexa property, except for the paved portion of the turning radius. Since the turning radius was paved by PennDOT and not the University, we cannot require the University to remove the paving. If Olexa wishes the paved area to be removed, appropriate action must be taken against PennDOT.

Olexa has not proved any monetary damages resulting from the encroachments, nor has she established that the encroachments were outrageous. Therefore, her claim for compensatory and punitive damages is denied.

## B. The Pipe Under Clamshell Drive

The University acknowledges that the pipe constructed under Clamshell Drive in August 1997 extends onto the Olexa property. It further acknowledges that the pipe was constructed without permission of Olexa or Upper Saucon Township. In response to Olexa's claim that this pipe constitutes a trespass, the University's sole defense is that Olexa's claim is barred by the statute of limitations.

Under the Judicial Code, 42 Pa.C.S. §5524(4), an action for trespass on real property must be commenced within two years after the trespass occurs. In this case the trespass occurred initially in August 1997, more than two years prior to the commencement of this action. However, the University's reliance on the statute of limitations as a complete defense is misplaced. The statute of limitations bars any claim for monetary damages, but it does not apply to a request for equitable relief. A claim for equitable relief is governed by the doctrine of laches, which requires not only (1) the passage of an unreasonable length of time between the injury and the filing of suit, but also (2) that the defendant has suffered prejudice as a result of the delay. *Wilson v. King of Prussia Enterprises Inc.,* 422 Pa. 128, 221 A.2d 123 (1966); *Miller v. C.P. Centers Inc.,* 334 Pa. Super. 623, 483 A.2d 912 (1984).

In determining what is an unreasonable delay in filing suit, the courts traditionally look to the same period as provided in the statute of limitations, in this case two years. However, there has been no evidence in this case of prejudice to the University by Olexa's delay in filing

suit. Therefore, the doctrine of laches does not bar her from obtaining equitable relief.

Since the pipe under Clamshell Drive clearly extends onto the Olexa property and was installed without Olexa's permission, Olexa is entitled to a mandatory injunction requiring the University to remove this pipe. However, she is not entitled to compensatory or punitive damages for this encroachment; no damages have been proved, and in any event any, claim for monetary damages is barred by the two-year statute of limitations.

## II. *Storm Water Trespass*

In Count II of the complaint, Olexa contends that the University, in the course of developing its property and making improvements from 1964 through the present, has intentionally caused a significant increase in the volume and rate of storm water flowing from the University's property onto the Olexa property. Olexa contends that these actions constitute a continuing trespass and have caused significant damage to her property, rendering the University liable at common law; under the Pennsylvania Storm Water Management Act, 32 P.S. §680.13; and under the Upper Saucon Township Subdivision and Land Development Ordinance (SALDO) at §§262.2 and 262.3.

## A. Common-Law Liability

In determining the liability of neighboring property owners for surface waters, the Pennsylvania courts have applied a version of the so-called common enemy rule. Under this rule, surface waters are deemed to be a common enemy that every landowner must dispose of as best he can.

"The owner of upper land has the right to have surface waters flowing on or over his land discharged through a natural water course onto the land of another . . . . He may make proper and profitable use of his land even though such use may result in some change in quality or quantity of the water flowing to the lower land . . . ." *Chamberlin v. Ciaffoni,* 373 Pa. 430, 436, 96 A.2d 140, 142-43 (1953), citing *Lucas v. Ford,* 363 Pa. 153, 155, 69 A.2d 114, 116 (1949).

Generally, damage to the lower landowner's property from surface water as a result of the upper landowner's use of his property is not actionable. The principle of damnum absque injuria applies.

There are two exceptions to this general rule. The first is "where the water is diverted from its natural channel . . ."; the second is "where it is unreasonably or unnecessarily changed in quantity or quality . . . ." *Id.;* see also, *Shamnoski v. P.G. Energy,* 579 Pa. 652, 858 A.2d 589 (2004).

Obviously, the expansion of the University in recent years with the construction of additional buildings, parking areas and roadways has created many more impervious surfaces on its property. Olexa contends that this development has caused a substantial increase in the volume of surface water flowing onto her property from the University's property, which is at a higher elevation. However, the University's development plan has been reviewed and approved by the Upper Saucon Township Engineer and by the Upper Saucon Township Planning Commission. As part of this plan, seven storm water detention basins have been installed on the University's property. We are not persuaded that the development of

the University's property has diverted surface water from its natural channel or has caused an unreasonable or unnecessary increase in the volume of surface water flowing onto the Olexa property, except for two projects of the University discussed below.

These two projects are (1) the construction of batting cages in the swale to the south of the Olexa property in 1994 or 1995 and (2) the installation of a storm water pipe under Clamshell Drive in 1997. In both of these projects, the University diverted surface water from its natural channel onto the Olexa property. The common enemy rule does not protect an upper landowner from liability under such circumstances.

Before these projects were undertaken, water from the University's land south of the Olexa property, if left to its natural course, would sheet-flow in the direction of the Olexa property. Some of this water would then enter the swale running from east to west just south of Clamshell Drive. From the swale, this water would flow to the culvert at the southwest corner of the Olexa property.

On entering the culvert, this water would then travel in a northerly direction west of the Olexa property in a storm water pipe installed by the University. This water would avoid the Olexa property.

The construction of the batting cages diverted water from this natural course. The University chose to build the batting cages, of all places, in the swale that moved water from east to west, south of Clamshell Drive. To accommodate the batting cages, the swale was re-graded so that the ground was flat at the point where the cages were constructed. The result is that the swale no longer

functions as before. The batting cages and the ground beneath them now obstruct the natural flow of water in the swale from east to west. Water can no longer move in its natural course along the swale to the culvert at the southwest corner of the Olexa property. The immediate result was that, in heavy rain events, water that would previously have traveled along the swale to this culvert would sheet-flow over Clamshell Drive onto the Olexa property. This water constituted a storm water trespass. The University was not insulated from liability for this trespass by the common enemy rule.

Then in 1997, to protect Clamshell Drive from erosion, the University constructed a storm water pipe under Clamshell Drive and extended this pipe a considerable distance on the Olexa property to the streambed. As a result, water that would have drained east to west in the swale before construction of the batting cages is now diverted through this pipe under Clamshell Drive to the streambed on the Olexa property. By installing the storm water pipe under Clamshell Drive as it did, the University again changed the natural flow of the water on its property. The collection and diversion of this water to a single location on the Olexa property constitutes a continuing storm water trespass that is not protected by the common enemy rule.

Aside from the diversion of water from the construction of the batting cages and the pipe under Clamshell Drive, we do not find any basis at common law for imposing liability on the University for storm water trespasses. The 42-inch storm water pipe carrying water from the University's property under Landis Mill Road to the Olexa property existed before Olexa and her former husband purchased the property in 1980. The size and di-

rection of this pipe have remained unchanged since then. The evidence produced by Olexa is insufficient to establish that the University has unreasonably or unnecessarily changed the quantity or quality of water flowing through this pipe. Hence, the water running through this pipe falls within the common enemy rule and is not a basis for imposing liability on the University.

Nor is the construction of the baseball field a basis for liability under the common enemy rule. The University constructed the baseball field on land to the south of the Olexa property in 1991. There is no evidence that this project adversely affected the drainage of surface water onto the Olexa property. Prior to the construction of the baseball field, the land on which it was built sloped towards Clamshell Drive on the north and to the west. Thus, even before the construction began, surface water from this part of the University's property flowed toward the Olexa property and toward the culvert at the southwest corner of this property. As part of the project, the land was re-graded to make the field level. No evidence was presented that this change altered the flow of surface water onto the Olexa property.

We did observe in our inspection of the Olexa property that there is evidence of significant erosion in the streambed that traverses the property. Most of this erosion was at the point where the pipe under Clamshell Drive empties into the streambed. It is not clear whether the other erosion observed was the result of natural conditions or whether it was caused by an increase in the volume or rate of flow of water from the University's property. We note, however, that even if caused by such an increase, the increase may well have originated from other properties in the general area. There are three or

four watersheds that drain in the direction of the Olexa property. These watersheds contain approximately 580 acres, of which the University owns about 60 percent. Thus, if there has been an increase in the volume or rate of flow of water onto the Olexa property, this could have been caused by activities of other property owners on their land within one of these watersheds. Accordingly, except for the water that has been entering the Olexa property because of the batting cages and the pipe under Clamshell Drive, we find that Olexa has not established a basis at common law for recovery for storm water trespasses.

Olexa has requested that we order the University to arrange for a University-wide storm water study to understand fully the flow of water onto her land and to suggest the best method of abating it. However, Olexa has not met her burden of establishing a basis for common-law liability against the University, except for the construction of the batting cages and the pipe under Clamshell Drive. Therefore, the remedy to which she is entitled must be limited to the correction of these violations. In the absence of an adequate remedy at law, she is entitled to equitable relief in the form of a mandatory injunction requiring the University to correct the conditions that have led to the diversion of surface water from the swale to her property, as well as an injunction against future storm water trespasses.

Olexa has not proved any monetary damages as a result of these violations. She does not dispute that her property, which was purchased in 1980 for $37,500, is now worth in excess of $500,000. It appears that the surrounding development that has taken place on the University's land and on other land in the nearby water-

sheds may have led to a substantial increase in the value of Olexa's property, rather than a reduction in value. Therefore, Olexa's claim for compensatory damages resulting from the storm water trespasses must be denied. Since we do not find the University's conduct in committing these trespasses to be outrageous, the claim for punitive damages is also denied.

## B. The Pennsylvania Storm Water Management Act

Section 680.13 of the Pennsylvania Storm Water Management Act provides as follows:

"Any landowner and any person engaged in the alteration or development of land which may affect storm water runoff characteristics shall implement such measures consistent with the provisions of the applicable watershed storm water plan as are reasonably necessary to prevent injury to health, safety or other property. Such measures shall include such actions as are required:

"(1) to assure that the maximum rate of storm water runoff is no greater after development than prior to development activities; or

"(2) to manage the quantity, velocity and direction of resulting storm water runoff in a manner which otherwise adequately protects health and property from possible injury." 32 P.S. §680.13.

The evidence is insufficient to establish that the University has violated the provisions of this Act, except for the two actions noted above in our discussion of the common enemy rule. These actions are the construction of the batting cages and the installation of the storm water pipe under Clamshell Drive. By constructing the batting

cages as it did, the University altered its land in a way that affected storm water runoff characteristics. Then, instead of managing this runoff in a way that protected the Olexa property, the University increased the harm to the Olexa property by diverting the excess runoff through a pipe under Clamshell Drive to a single location on the Olexa property. These two actions by the University violated section 680.13 and entitle Olexa to appropriate relief under section 680.15.[29] This relief includes a mandatory injunction requiring the University to abate the violation and an injunction prohibiting further violations in the future.

### C. The Upper Saucon Township Subdivision and Land Development Ordinance

Sections 262.2 and 262.3 of SALDO state the following:

"The existing points of natural drainage discharge onto adjacent property shall not be altered without the written approval of all affected landowners." (Section 262.2.)

"No storm water runoff or natural drainage water shall be so diverted as to overload existing drainage systems, or create flooding. No storm water runoff or natural drainage water shall be so diverted as to create the need for additional drainage structures on other private properties or public lands, without approved provisions being made by the developer for properly handling such conditions." (Section 262.3.)

The University's construction of the batting cages, which necessitated the re-grading of the swale south of Clamshell Drive, changed the natural flow of water. In

29. 32 P.S. §680.15.

addition, the storm water pipe installed under Clamshell Drive moved this water directly onto the Olexa property at a single location in the streambed. The University did not make adequate provisions for handling these changes. The result has been erosion of the streambed, including the exposure of tree roots. The University's actions in constructing the batting cages and the storm water pipe under Clamshell Drive appear to be a clear violation of sections 262.2 and 262.3 of SALDO.

However, a private cause of action does not exist to enforce ordinances enacted under the Municipalities Planning Code, such as SALDO, unless a copy of the complaint is first served on the governing body of the municipality at least 30 days prior to the filing of the complaint.[30] There is no evidence that Olexa did so in this case. Therefore, we are unable to grant her relief for violations of SALDO.

### III. *Negligence*

The actions of the University in trespassing on the Olexa property were intentional. Therefore, Olexa's negligence claim in Count III must be dismissed.

### IV. *Ejectment*

An action in ejectment will lie to establish one's right to possession of real estate. *Soffer v. Beech,* 487 Pa. 255, 409 A.2d 337 (1979). In this case Olexa is entitled to sole and exclusive possession of the subject property, as identified in Lehigh County Deed Book 1282 page 275, and as shown on the survey plan of Kerry Good P.E.,

---

30. 53 P.S. 19617.

defendant's exhibit 7. Accordingly, judgment in ejectment will be entered in her favor.

## ORDER

Now, December 12, 2005, after trial without jury, based on the decision annexed hereto, it is ordered and decreed as follows:

### Count I—Trespass

(1) Defendant, its agents and employees, are hereby enjoined (a) from utilizing the portion of Clamshell Drive that extends onto plaintiff's property, as identified on the survey plan of Kerry Good P.E., defendant's exhibit 7; (b) from utilizing the turning radius at the southeast corner of plaintiff's property to the extent that the turning radius extends over plaintiff's property, as indicated in the aforesaid survey plan; and (c) from maintaining the storm water pipe under Clamshell Drive to the extent that it extends onto the southern portion of plaintiff's aforesaid property.

(2) A mandatory injunction is hereby issued directing defendant (a) to remove the portion of Clamshell Drive and the portion of the storm water pipe that extend onto the southern part of plaintiff's aforesaid property and (b) to restore the areas from which these encroachments are removed to their pre-encroachment condition. The removal and restoration as aforesaid shall be completed by April 1, 2006.

(3) Plaintiff's request for compensatory and punitive damages is denied.

### Count II—Storm Water Trespass

(1) Defendant, its agents and employees, are hereby enjoined (a) from discharging storm water onto the plaintiff's property through the pipe that extends under Clamshell Drive and (b) from maintaining batting cages and other obstructions that interfere with the natural flow of water in a westerly direction along the swale to the south of Clamshell Drive.

(2) A mandatory injunction is hereby issued directing defendant (a) to remove the storm water pipe that extends under Clamshell Drive onto plaintiff's property; (b) to relocate the batting cages from the swale south of Clamshell Drive to a location where they do not interfere with the natural flow of surface water entering the swale; (c) to restore the areas from which the storm water pipe and batting cages are to be removed to their pre-installation condition; and (d) to re-grade the swale to its condition prior to the construction of the batting cages. The removal and restoration as aforesaid shall be completed by April 1, 2006.

(3) Plaintiff's claim for compensatory and punitive damages is denied.

### Count III—Negligence

Judgment is hereby entered for defendant on Count III.

### Count IV—Ejectment

Judgment is hereby entered for plaintiff against defendant in ejectment for sole and exclusive possession of plaintiff's property, as identified in Lehigh County Deed Book 1282 page 275 and in the survey plan of Kerry Good P.E., defendant's exhibit 7.